UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) CR. NO. 05-342 (RCL) |
| | ) |
| ALVARO SERRANO ARCHBOLD-MANNER, et. al., | ) |
| Jesus Antonio Murillo-Lenis(2), | ) |
| Ranfer Rios-Mercado (3), | ) |
| Carlos Delgado-Gomez (10), | ) |
| Enrique Oyola-Ropero (12), | ) |
| German Villegas-Mejia (17), | ) |
| Gerardo Tobon-Rojas (18) and | ) |
| Fernando Zapata-Bermudez (19) | ) |
| | ) |
| Defendants. | ) |

**GOVERNMENT'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF ON THE ISSUE OF BAD FAITH IN SUPPORT OF MOTION TO DISMISS FOR LACK OF DUE PROCESS**

I.  Introduction

Defendants seek dismissal of the indictment in this case, claiming that the government has acted in bad faith by failing to preserve physical evidence – cocaine seized by a foreign country – and by producing 10,000 pages of discovery so late in the proceedings. Supp. Br. at 2, 6-7. Defendants also claim that the government has violated their due process rights because it has "intentionally delayed" the production of discovery. Supp. Br. at 6. Defendants' factual assertions are plagued by blatant inaccuracies and mischaracterizations; their legal arguments are unpersuasive, as the cases relied upon involve domestic seizures of drugs over which the United

1

States government had custody and control. In this case – an international prosecution dependant upon cooperation from the sovereign nation of Colombia – the government has operated in good faith, consistent with other prosecutions in this district under 21 U.S.C. § 959, all of which have been upheld by the D.C. Circuit on appeal.

II.     Facts and Procedural History

The facts and procedural history of this case have been previously set forth in detail by the government in numerous pleadings, and the government incorporates by reference the relevant facts and procedural history herein. In essence, defendants filed various motions compelling discovery, to which the government filed an Omnibus response [216]. Thereafter, a motions hearing was held on August 14, 2008. On August 15, 2008, the Court issued an Order, wherein the government was ordered to make certain productions, and a status conference was scheduled for September 12, 2008. On the eve of the status conference, defendants filed a reply brief [270] in further support of their outstanding motion to dismiss the indictment on due process grounds [190]. Following the status conference, defendants filed the instant supplemental brief on the issue of bad faith in further support of their motion to dismiss for lack of due process [272].

III.    Defendants Fail to Establish Bad Faith as a Matter of Law and Fact

Dismissal of an indictment for failure to produce discovery is an extreme remedy that is available only if the government has acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988) ("the 'fundamental fairness' requirement of the Due Process Clause" does not "impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.").

"[T]he *defendant* bears the burden of proving that the government failed *in bad faith* to preserve *material* and *potentially exculpatory* evidence." *United States v. McKie*, 951 F.2d 399, 403 (D.C. Cir. 1991) (emphasis in original). Defendants fail to satisfy their burden of proof on both legal and factual grounds.

    A.    The Government Cannot "Preserve" Evidence in the Possession of a Foreign Government

As a matter of law, defendants cannot establish that the government failed to preserve physical drug evidence, because that evidence was seized by the sovereign and independent country of Colombia. It is axiomatic that the government cannot preserve something it has never possessed. *See United States v. Mejia*, 448 F.3d 436, 444 (D.C. Cir. 2006) (rejecting argument that government obligated to obtain tapes of foreign judicial proceedings: "[h]aving the authority 'to seek' tapes or transcripts through a treaty is not the same thing as having 'the power to secure' them."). Neither *Youngblood* nor any of the cases cited by defendants, Supp. Br. at 5, purport to apply to international cases, such as this, in which the United States government can, at most, request that a foreign government produce the physical evidence it controls.

Defendants do not address this issue directly, but claim – in two conclusory sentences without citation to the record or relevant case law – that "the Court has also heard that it is clear that the prosecutions in this case are the result of a joint venture agreement between the United States and the Colombian governments." Supp. Br. at 9. The government has conceded no such thing, nor have defendants established the existence of a joint venture. The mere fact that "United States law enforcement officials and Colombian law enforcement officials * * * have been working together and sharing information and files regarding the investigations," *ibid*., does

not make the investigation a "joint venture." To the contrary, a joint venture requires more than mere cooperation. *See, e.g.,. United States v. Behety*, 32 F.3d 503, 511 (11th Cir. 1994) (no joint venture because the search and seizure were conducted primarily by Guatemalan officials); *United States v. Morrow*, 537 F.2d 120, 140-41 (5th Cir. 1976) (no joint venture when United States officers merely furnish information to foreign officials); *United States v. Marzano,* 537 F.2d 257, 269-70 (7th Cir. 1976) (no joint venture when United States law enforcement officers were merely present at the scene of a search and seizure); *Stonehill v. United States*, 405 F.2d 738, 746 (9th Cir. 1968) (no joint venture when United States officials offered information to Philippine officials and had knowledge of raid conducted by Philippine officials); *Birdsell v. United States*, 346 F.2d 775, 782 (5th Cir. 1965) (no joint venture even though United States officers were "present and cooperating in some degree" with local officials); *see also United States v. Abu Ali*, 395 F. Supp.2d 338, 381-82 (E.D. Va. 2005) (no joint venture between United States and Saudi officials because of a lack of "substantial" United States involvement in the interrogation of the defendant). Accordingly, defendants fail to establish a joint venture based on their conclusory assertions, unsupported by citations to fact or law.

      Rather, in support of their contention that the government acted in bad faith by failing to "preserve" the cocaine in possession of a foreign government, defendants specifically argue that, at the status conference, "the prosecutor was forced to concede that he still has no idea whether any of these controlled substances, or any samples thereof, even exist." Supp. Br. at 2. This statement is an inaccurate characterization of what occurred at the status conference. At the status conference, the prosecutor clearly stated that a colleague was in possession of such knowledge, but that, personally, the prosecutor was unable to state whether representative

samples of the cocaine tested still existed. The prosecutor represented to the Court and to defense counsel that he would obtain such information and inform counsel of same. In accordance with that representation, the government hereby informs the Court and counsel that the representative samples of the cocaine tested from the Colombian seizure at issue in Count II were destroyed, while the representative samples of the cocaine tested from the Colombian seizures at issue in Counts III and V still exist. The reason for the destruction of the samples in Count II is because, in accordance with Colombian law, samples are kept only for three years.

The government requested that the remaining samples be brought to Washington, D.C. but were informed by the National Chief of the Fiscalia for the laboratories on a national level that it is illegal to remove any narcotics from Colombia under any circumstances. However, in an effort to assist the United States government, the Colombian Authorities agreed to take photographs of the actual tested samples from Counts III and V and provide them to the government. To date, no photographs of the tested samples were provided to defendants because, at the present moment, none exist. Indeed, at the time of the seizures, Colombian law did not require that the actual samples be photographed. Additionally, the National Chief of the Fiscalia agreed to allow defense counsel to test the remaining samples in Colombia. It should be noted that defendants have already been provided with photographs of the actual cocaine seized by the Colombian Authorities, the laboratory reports regarding the testing of the cocaine from each seizure, as well as the names and telephone numbers of the forensic chemists who analyzed the cocaine at issue and will testify at trial regarding same.

Furthermore, defendants contend that the government intentionally failed to preserve the cocaine at issue to gain a tactical advantage, yet defendants do not bother to identify this alleged

tactical advantage. Supp. Br. at 6, 9. Contrary to the defendants' conclusory assertion, the government has not gained any tactical advantage. In fact, not only has the government not gained any tactical advantage, but the government actually has been disadvantaged by the disclosure of the 10,000 pages of discovery. First, as noted by the prosecutor at the status conference, these documents were duplicated and disclosed immediately upon receipt from Colombia. As such, there was no redaction of any information, including the identities of potential witnesses. Second, the produced discovery supports the government's case; accordingly, if such evidence had been in the government's possession at an earlier date, it would have been advantageous to produce it at that time in an effort to resolve this matter without a trial.

> B. The Government's Approach Has Consistently been Accepted by Other Courts in this District and the D.C. Circuit

Also absent from defendants' argument is any acknowledgment that the government's approach in this cases is consistent with prior prosecutions under 21 U.S.C. § 959 – an approach that has been consistently accepted by judges in this district and upheld on appeal by the D.C. Circuit. *See, e.g. United States v. Valderama*, 1:03-cr-00554-JR (evidence of foreign drug seizures established solely by non-drug evidence); *United States v. Caracas,* 1:02-cr-00112-RCL (defendant Simon Trinidad) (evidence of foreign drug field tests established by non-drug evidence); *see also United States v. Mejia*, 1:99-cr-00389-RWR, *aff'd* 448 F.3d 436 (evidence of drug seizures established solely by non-drug evidence such as testimony of foreign chemist and law enforcement officers); *United States v. Martinez*, 1:03-cr-00331-CKK, *aff'd* 476 F.3d 961 (D.C. Cir. 2007) (same). Such an approach is logical because § 959 cases frequently involve

foreign seizures of drugs with minimal or no United States involvement. There is nothing improper in this approach, as the government bears the burden of convincing the jury on this evidence, and the defense has every opportunity to cross-examine the witnesses on this issue.

To the contrary, to the extent the defendants acknowledge other cases, *see* Supp. Br. at 12, they do so again with sweeping conclusions unsupported by any citations. Indeed, rather than recognizing this prior precedent, defendants characterize these cases as examples of a system run amok. To correct this alleged travesty, defendants request that this court essentially send a message to the government in all international prosecutions by dismissing this case. *Ibid.* Such a request is unprecedented, unjustified, and completely irreconcilable with the narrow, cautious approach adopted in *Youngblood*. Moreover, defendants' argument essentially urges this Court to second guess the decisions of district court judges in other § 959 cases, who obviously did not find the government's discovery practices outrageous or fundamentally unfair. *See, e.g. Mejia*, 448 F.3d at 444 (upholding district court's decision not to alter discovery requirements in an international case). Defendants' request should be summarily dismissed.

    C.    The Defendants Have Not Established that the Government Intentionally Delayed Production of Discovery

In a related issue, defendants claim that the government has violated their due process rights because it has "intentionally delayed" the production of discovery. Supp. Br. at 6. Again, defendants have no evidence to support this claim of government misconduct, but simply draw inferences from facts that, at best, are incomplete and, at worst, patently incorrect. For example, defendants offer the following flawed syllogism in support of their argument: (1) it is clear that this is a joint venture; (2) the Colombians provided access to the government to copy files to

avoid dismissal; (3) therefore, "the only logical conclusion that can be drawn from these facts is that the Colombian and United States law enforcement officials with access to the files in Colombia have decided that they can gain an important tactical advantage over the defendants by simply withholding or delaying production of the discovery and evidence." Supp. Br. at 9. Defendants' analysis is fatally flawed and does not support its claim of government misconduct. Defendants even go so far as to contend – again without any factual basis – that the government was able to obtain "a huge mass of documents ... without any need for anyone to wait for formal answers to the Government's Vienna Convention Requests;" therefore, defendants claim, the government misled the Court by representing that compliance with a formal Vienna Convention Request is necessary before discovery can be produced. Supp. Br. at 6-7. These allegations by defendants, among others, are baseless and false.

    The first assertion – that there is obviously a joint venture – fails due to the absence of any facts, analysis, or reference to legal citation. As noted above, "joint venture" is a legal term of art and, despite ample opportunity to do so, defendants have failed to identify any facts or legal argument to support this claim.

    The second assertion is flatly incorrect – Colombian officials did not provide United States officials with "access to relevant files so they could be copied." Supp. Br. at 9. Rather, the Colombian Authorities provided the 10,000 pages of documents to the United States government in response to a Vienna Convention Request. Moreover, these documents were obtained directly from the Colombian Authorities, **not** DEA agents in Colombia. In fact, to comply with the Vienna Convention Request, one Colombian prosecutor traveled over six hours to a small town on the North Coast of Colombia to obtain a box of documents related to this

case.

Defendants' "logical" inference from these incorrect facts is not "logic," but mere speculation that simply ignores any number of reasons as to why the discovery was produced at this time. Most telling in defendants' arguments are three omissions. First, defendants simply ignore the order issued by this court (and widely publicized in the Colombian media) that the case could be dismissed without the evidence and ignore the temporal relationship between the order and the subsequent release of the documents. Second, as noted above, defendants fail to identify what "important tactical advantage" the government has gained by supposedly conspiring with the government of Colombia to withhold this discovery. Third, defendants conveniently disregard the government's representations to the Court (and thus defense counsel) that it was unaware of this recent discovery until Colombian law enforcement agents referred to additional documents in possession of a Colombian prosecutor during trial preparation. As a result, the government made additional inquiries of the Colombian Authorities, and shortly thereafter drafted, translated, and submitted a Vienna Convention Request to the Government of Colombia. Upon receipt of the Court's August 15, 2008 Order, the Government was able to request that the Government of Colombia comply with the Vienna Convention Request on an expedited basis. Pursuant to this formal request for evidence, the Government was able to obtain, both formally and informally, the discovery at issue. Thus, contrary to the defendants' contention that the government repeatedly failed to produce "long-requested discovery" in a timely manner, Supp. Br. at 8, the government obtained the discovery at issue through official channels within six weeks of becoming aware that such additional discovery existed in Colombia. Accordingly, defendants' assertions are pure speculation and do not meet defendants'

heavy burden of proof.

Finally, defendants argue that dismissal is the appropriate sanction here because a continuance would be "fundamentally unjust." Supp. Br. at 12. It is the defendants' position that the government requested that the Court do one of two things – proceed to trial on October 1, 2008 or grant a continuance. As the Court may recall, the government never requested a continuance at the September 12, 2008 status conference. Rather, the government clearly and unequivocally stated that it was ready to begin the trial against the first trial grouping on October 1, 2008. Thus, defendants' assertion that "[t]he Government is clearly angling for a continuance in an effort to fend off a dismissal," Supp. Br. at 8, is just yet another example of the persistent inaccuracies set forth by defendants in their supplemental brief in support of motion to dismiss the indictment, which is otherwise unsupported by the facts or applicable case law.

IV.   Conclusion

For the foregoing reasons, defendants have failed to meet their heavy burden of establishing that the government has acted in bad faith by failing to preserve certain evidence and by disclosing a large amount of additional discovery late in the proceedings. Accordingly, this Court should find that dismissal of the indictment is not warranted.

        Respectfully submitted,


        Wayne Raabe, Acting Chief
        Narcotic and Dangerous Drug Section

        _____/s/_____

        Patrick H. Hearn
        Trial Attorney
        Narcotics and Dangerous Drug Section
        U.S. Department of Justice
        1400 New York Avenue, N.W.
        Washington, D.C. 20005
        (202) 305-7606


## CERTIFICATE OF SERVICE

The undersigned certifies that on September 17, 2008, the above Response to Defendants' Supplemental Brief on the Issue of Bad Faith in Support of Motion to Dismiss for Lack of Due Process was sent via ECF counsel for the defendants.


        _____/s/_____

        Patrick H. Hearn
        Trial Attorney
        U.S. Department of Justice
        Narcotic and Dangerous Drug Section